## Woelfel Leather Company v. Thomas Thomas.

1. EVIDENCE—*Proof of Previous Accidents to Show Condition of Machinery.*—In a suit for damages for personal injuries based on the alleged defective condition of a safety appliance on an elevator, it is error to admit proof of a previous accident where there is no evidence to show that it was in consequence of any defect in the safety appliance.

2. SAME—*Tests of Machinery.*—In a suit for damages for personal injuries, based on the alleged defective condition of a safety appliance on an elevator, it is error to exclude the evidence of experts as to the condition of the safety appliance, at the time of a test made shortly after the accident, where the evidence showed that the appliance was then in the same condition as at the time of the accident.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Grundy County; the Hon. GEORGE W. STIPP, Judge, presiding. Heard in this court at the December term, 1896. Reversed and remanded. Opinion filed December 17, 1896.

S. C. STOUGH and A. R. JORDAN, attorneys for appellant.

E. L. CLOVER and C. F. HANSON, attorneys for appellee.

PER CURIAM.

This was an action on the case brought by appellee against appellant to recover damages for injuries alleged to have been sustained by him, while in its service, as a common laborer in a tannery at Morris, in said Grundy county, on August 12, 1895. The declaration contained four counts, but upon the trial, there being no evidence to sustain a recovery under the first and second, as to those counts the court directed a verdict for defendant, and as appellee makes no complaint as to this action of the court, it is unnecessary to consider whether it was proper or not. The third count in substance alleged that on August 12, 1895, appellant was possessed of and using a certain building as a tannery; that appellee was employed therein as a common laborer; that there was in said building a certain elevator used for the purpose of conveying employes and freight from one floor

to another in the building; that it was the duty of defendant to have and keep said elevator in a reasonably safe condition for use by its servants; that defendant neglected such duty, in this: that the dogs provided for the purpose of stopping and holding said elevator in case the same should fall, were not of sufficient strength to hold said elevator, whereby said elevator became and was dangerous and unsafe to those who were upon the same; that while said elevator was being operated by the defendant, it suddenly and without warning started to descend while plaintiff was upon it, while in the discharge of his duty, and said dogs, by reason of their unsafe condition, were unable to hold said elevator, in consequence of which the elevator fell with the plaintiff a great distance, causing his injury.

The fourth count is similar to the third, except that it alleges that the dogs attached to the elevator for the purpose of stopping the same, in case of its suddenly falling, were so improperly placed that they were incapable of stopping or holding the elevator, whereby it was in an unsafe and dangerous condition for those who were upon the same; and the allegations as to the accident and injury were the same as in the third count.

On the day of the accident appellee and one O'Donnell, a fellow-servant, had just placed a "horse leather" upon the elevator for the purpose of moving it to another floor, when it suddenly started downward and went to the basement floor, upon striking which, the machinery seems to have been reversed automatically, when the elevator started up again, and then the wire cable broke and fell, and appellee was injured, not by the cable, but by the fall of the elevator.

We do not find in the record any evidence showing the improper construction of the elevator, nor of its safety device, nor of the improper attachment of the dogs. Nor is there any evidence, beyond the mere fact that the elevator fell and the safety dogs did not catch and hold it, that they were in an improper or unsafe condition. There is evidence tending to show that these dogs are not expected

or intended to operate, except in case the cable breaks, or other accident happens whereby the elevator is set free to fall.

The wire cable which operates the elevator, runs upon pulleys, two loose and one tight pulley, and to raise or lower the elevator the cable is shifted from one pulley to the other as may be required. The evidence tends to show that if the cable is not properly or fully shifted from one pulley to the other, the elevator may go down suddenly, and yet the cable be tight enough to prevent the dogs from being released sufficiently to take hold and stop it. Appellant's theory is that O'Donnell, who was working with appellee, carelessly operated the elevator, whereby it fell and caused the injury. We think the evidence is clear that the cable did not break until the elevator had fallen to the basement, and started upward again, but there is no satisfactory proof as to how or why it so suddenly started on its descent.

Witnesses were allowed to testify, over the objection of appellant, that some years before the accident to appellee, this same elevator fell from the top floor to the basement, with the men who were then upon it. We think this was error. The occurrence was too remote in time, and there is nothing to show that it was in consequence of any defect in the dogs or safety device. So far as the evidence shows, the accident occurred through the improper operation of the elevator by one Becker, on one of the lower floors of the building. Under the circumstances of this case the admission of this evidence was erroneous and prejudicial to appellant.

There was some evidence on the part of appellant that about three days after the accident to appellee, a new cable was put in and the elevator tested to see whether the dogs worked properly or not. There was also proof that after the new cable was put in the dogs were in the same condition they were at the time of the accident. Other evidence of like character was offered as to the test, and the fact that the dogs worked properly and stopped the elevator as they

Woelfel Leather Co. v. Thomas.

were designed to do, but this evidence was rejected by the court, although the witnesses, some of them at least, appear to have been experts and competent to testify on that point. In this we think there was also prejudicial error.   In the state of the evidence under the pleadings in the case, it was all important to appellant to be permitted to prove that the accident did not occur from the causes alleged in the third and fourth counts of the declaration.   The evidence offered tended to prove the dogs, or safety device, were in proper condition for stopping the elevator on the day of the accident, and we think it should have been admitted.   We see nothing to show that the putting in of the new cable affected the injury in one way or the other.

We see no serious objection to the court's action on the instructions, but for the errors indicated the judgment will be reversed and the cause remanded.